PLAGER, Circuit Judge,
Dissenting.
The medical experts who designed the VA disability rating system for veterans with service-connected disabilities had no difficulty in understanding that different people with the same illness do not always present the same symptoms, and that different people with the same illness do not always respond in the same way to the same drugs. They wisely built two foundational concepts into the rating schedule to provide for these understandings.
First, they stated at the outset that: “This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service.” 38 C.F.R. § 4.1 (emphasis added). In case anyone should miss the point that a guide is not a rigid diagnostic code or a treatment prescription, they added that the rating schedule should be interpreted broadly and in a manner that is veteran friendly. See 38 C.F.R. § 4.3 (quoted in full below).
Then, because even using their best efforts they could not anticipate the many ways that illnesses present, nor could they anticipate changes in treatment that new drugs might support, they added a second caveat to the “General Policy in Rating”:
Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the [veteran’s] disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned.
38 C.F.R. § 4.7.
In the case before us, the central issue is whether these foundational concepts apply to the rating schedule for diabetes mellitus. All agree that Mr. Middleton, who •suffers from diabetes mellitus, has a compensable illness; the question is whether, under the rating guides in DC 7913, he is properly compensated at the 20% or 40% disability level. The record shows that his symptomology and his treatment regimen place him somewhere between the two descriptive guides for the two ratings; he does not fit squarely into either.
Mr. Middleton takes oral hypoglycemic agents, requires a restricted diet, regulates his activities, and receives daily injections of the drug Byetta®. He appears to meet all of the criteria for the 20% level, and all of the criteria for the 40% save one: insulin. Mr. Middleton argues that his Byetta injections are analogous to injections of insulin, thus putting him ‘nearly approximate’ to the 40% level. However that may be, and despite the majority’s concern with all this, the facts of Mr. Middleton’s particular case are irrelevant to the issue we must decide.
As the majority correctly notes, our question is not to which of these ratings Mr. Middleton is entitled. For us to determine whether Mr. Middleton satisfies every element of the 20% level and ‘approximately’ meets every element of the 40% level, or not, involves application of the law to the facts, which is beyond our jurisdiction under the peculiar standard of review Congress gave us over decisions of the Court of Appeals for Veterans Claims. Rather, the question of interpretation of VA law — over which we do have jurisdiction — is whether the foundational concepts set out in the provisions of the rating schedule quoted above apply to DC 7913, structured as it is (and presumably other provisions structured like it[1]).
*1180 The Government argues that when there is a successive and cumulative rating schedule, as here, the veteran seeking the higher rating can only obtain it if the language of the higher rating does not have specific requirements for that rating; if it does, the veteran must meet the requirements in haec verba. But the. standard in § 4.7 is “more nearly approximates the criteria for that rating,” clearly providing that something approximating the criteria — not the criteria itself — is what to look for. If verbal compliance with the words of the guideline is what is required, § 4.7 has no meaning.
Recognizing the weakness in this argument, the Government couples it with the classic “read the statute” first argument. And it is certainly true that we judges spend much of our time interpreting statutes, seeking understanding of what the Congressional verbiage means by parsing the verbs and the nouns of a statute as if they contain some secret code that only we can penetrate. My colleagues, putting their interpretive skills to use, find in the stated rating schedule a controlling difference between the “and” in the 40% rating and the “or” in the 20% rating. Maj. Op. at 1178. “For the distinction between the ratings in this successive code to have any significance, we must give meaning to the ‘and’ in the higher evaluation.” Id. The fact that the syntax and punctuation surrounding the “or” in the lower evaluation guide makes little grammatical sense is of no moment — the truth is in the words, and in the “plain language” of the ratings guide.
With due respect, the verbal statements in this ratings schedule are, as the regulations themselves state, only guides; calling it “the code,” as the majority frequently does, cannot change that fact. These are guides, not for the display of interpretive technique, but guides to what a sensible application of the two foundational concepts addresses. In a veteran-friendly system, what outcome is called for when the symptoms and prescribed treatment fall somewhere between the ratings, for example because a different drug — Byetta — is injected to treat the veteran’s particular version of the illness rather than the standard drug — insulin, the one mentioned in the guide? Does that really turn on the difference between an “and” and a confusingly mistyped “or”? Should not the outcome instead respond to a commonsense analysis reflecting the illness and its treatment, and the purpose of a disability program for veterans who have honorably served their country?
I do not mean to say that the VA can begin its analysis of an application for benefits by setting aside criteria in the rating schedule. But if the YA’s analysis reveals that the veteran’s disability falls between two ratings, § 4.7 directs the VA to determine whether the disability picture more nearly approximates the criteria for the higher rating. If it does, § 4.7 honors substance over form by awarding the veteran the higher rating. The medical experts who designed the system wanted it that way. Indeed, as the “General Policy in Rating” tells us, “[i]n view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified.” 38 C.F.R. § 4.21 (emphasis added). The argument that an illness with a “successive and cumulative rating schedule” is exempt from the ameliorative purposes of § 4.7 cannot be right. Nothing in DC 7913 suggests that the court should exempt it, or *1181 others like it, from § 4.7 and the clear policy of the ratings schedule.
Simply put, the majority’s interpretation of § 4.7 is incorrect. The interpretation that it does not apply to provisions like DC 7913 offends the general policies and procedures understood by the medical profession. It snatches away the flexibility that the VA needs to battle the epidemic of diabetes and hands them a clipboard with a checklist. We should not hamper the VA’s efforts to carry out their stated policy:
It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant.
38 C.F.R. § 4.3.
The majority opinion cites a nonprecedential opinion for its legal support.[2] However mistaken its authority, there is little this dissent can do to correct the disservice of the decisional outcome in this veteran’s case. Nevertheless, it is to be hoped that the majority’s treatment of veteran’s law generally will be given the same weight as their nonprecedential authority, and that it will not be followed in future cases as a correct understanding of the law applicable more broadly to other such cases.
I respectfully dissent.

. See § 4.119 Schedule of ratings — endocrine system. In addition to the successive steps *1180 for 7913 Diabetes mellitus (5 steps), § 4.119 lists several other illnesses with successive steps, e.g., 7900 Hyperthyroidism (4 steps); 7909 Diabetes insipidus (4 steps); and 7911 Addison's disease (3 steps).

. Boyle v. Nicholson, 233 Fed.Appx. 984 (Fed.Cir.2007). In addition to relying on a nonprecedential opinion as precedent contrary to the long-standing policy of the court, the Boyle opinion offers no support: Boyle says nothing of § 4.7, nor does Boyle discuss § 4.7’s application to DC 7913. Id.